DOBBS v VILLA CAPRI RESTAURANT

Docket No. 61975. Submitted October 14, 1982, at Escanaba.—Decided
    December 7, 1982. Leave to appeal applied for.

Robert E. Dobbs, as a result of a work-related accident, had his
    lower left arm severed such that there remains in that arm an
    ulna of 6-7/8 inches in length and a radius of 5-7/8 inches in
    length. Dobbs sought specific loss workers' disability compensa-
    tion benefits. The referee held that, since the shorter remaining
    portion of the two lower arm bones was less than six inches in
    length, the amputation was within six inches of the elbow and
    that, accordingly, Dobbs suffered the specific use of an arm and
    was entitled to 269 weeks of compensation. Dobbs' employer,
    Villa Capri Restaurant, and its insurer, Employers Insurance of
    Wausau, appealed to the Workers' Compensation Appeal Board.
    The appeal board reversed the determination of the referee,
    holding that the statutory six-inch distance from the elbow
    should be measured along the ulna from the projecting point of
    the ulna which comprised part of the olecranon process of the
    elbow and that, since such distance in Dobbs' case exceeded six
    inches, Dobbs had a specific loss of a hand rather than an arm
    and was entitled to only 215 weeks of compensation. Dobbs
    appeals. *Held:*

    The legislative history of the statutory provision relating to
    the differentiation between loss of a hand and loss of an arm,
    when compared with the legislative history of the statutory
    provision relating to the differentiation between the loss of a
    foot and the loss of a leg, evidences a clear intent by the
    Legislature that the six-inch distance should be measured from
    the lowest point of the elbow. The distance, accordingly, should
    be measured along the radius rather than the ulna.

    Reversed.

1. WORKERS' COMPENSATION — WORKER'S DISABILITY COMPENSATION
    ACT — JUDICIAL CONSTRUCTION.
    Courts, in construing the meaning of words used in the Worker's

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 81 Am Jur 2d, Workmen's Compensation §§ 28, 29.
[3] [no reference]

Disability Compensation Act, should give the words meanings which comport with the common acceptance of the language used by the Legislature and the beneficial purposes of the act.

2. WORKERS' COMPENSATION — WORKER'S DISABILITY COMPENSATION ACT — JUDICIAL CONSTRUCTION.

The Worker's Disability Compensation Act is generally construed liberally in favor of injured workers.

3. WORKERS' COMPENSATION — WORKER'S DISABILITY COMPENSATION ACT — LOSS OF ARM.

The six-inch distance below the elbow used by the Worker's Disability Compensation Act to differentiate the loss of a hand from the loss of an arm is to be measured along the radius rather than along the ulna with its projecting olecranon process (MCL 418.361[2]; MSA 17.237[361][2]).

*Jason, Jason & Finkbeiner, P.C.* (by *Clifford D. Smith),* for plaintiff.

*Corcoran, Ingleson & Lewinski, P.C.* (by *Guy W. Lewinski),* for defendant.

Before: D. F. WALSH, P.J., and ALLEN and M. F. CAVANAGH, JJ.

D. F. WALSH, P.J. Plaintiff, Robert E. Dobbs, appeals from the determination of the Workers' Compensation Appeal Board that plaintiff had lost a hand in a work-related accident and that he was, therefore, entitled to 215 weeks of specific loss benefits. MCL 418.361(2)(h); MSA 17.237(361)(2)(h). The appeal board's decision reversed the finding of the hearing referee that plaintiff had lost an arm and was entitled to specific loss benefits for 269 weeks. MCL 418.361(2)(i); MSA 17.237(361)(2)(i).

MCL 418.361(2); MSA 17.237(361)(2), provides in pertinent part:

"In cases included in the following schedule, the disability· in each case shall be considered to continue for the period specified, and the compensation paid for

the personal injury shall be 80% of the after-tax aver-age weekly wage subject to the maximum and mini-mum rates of compensation under this act for the loss of the following:

*  *  *

"(h) Hand, 215 weeks.
"(i) Arm, 269 weeks.
"An amputation between the elbow and wrist that is 6 or more inches below the elbow shall be considered a hand, and an amputation above that point shall be considered an arm."

The issue presented for our consideration in this case is the appropriate point of departure when measuring "below the elbow". The appeal board's resolution of this question of statutory interpreta-tion is not binding on this Court. MCL 418.861; MSA 17.237(861). We must determine if the appeal board applied the correct legal standard to the undisputed facts. *Reno v Holmes,* 238 Mich 572; 214 NW 174 (1927).

There are two substantially equal and parallel bones in the human forearm—the ulna and the radius. The parties in this case agree that the length of plaintiff's left ulna, as a result of his work-related accident, is 6-7/8 inches, and that the length of his left radius is now 5-7/8 inches.

The hearing referee in this case explained his determination as follows:

"The loss of an arm is determined on the rationale of the forearm being composed of two bones. One being amputated within six inches of the elbow meets the statutory requirement, I find, for a determination as made."

In its two-to-one decision, the appeal board dis-agreed, stating:

"While this type of case is indeed rare, we feel, and so find as fact, that the Legislature in approving MCL 418.361(1) intended the reference point for such measurements to be the projecting point of the ulna comprising a part of the olecranon process of the elbow."

Judicial construction of the words "below the elbow" must "comport with the common acceptance of the language used by the legislature [and] the beneficent purposes of the [worker's disability compensation] act". *Reno v Holmes, supra,* 575. The Worker's Disability Compensation Act (WDCA) is generally construed liberally in favor of injured workers. *LeBlond v All Right Auto Parts, Inc,* 81 Mich App 509, 513; 265 NW2d 394 (1978).

Examination of the contrasting legislative histories of MCL 418.361, subds (2)(h) and (2)(i); MSA 17.237(361), subds (2)(h) and (2)(i), and MCL 418.361, subds (2)(j) and (2)(k); MSA 17.237(361), subds (2)(j) and (2)(k), persuades us that the appeal board's determination of the Legislature's intent in this case was incorrect.

The earliest version of the WDCA stated only that "for the loss of a hand" (or an arm or a foot or a leg), a certain percentage of average weekly wages would be payable for a specified number of weeks. 1915 CL 5440; 1919 PA 64.

In *Stocin v C R Wilson Body Co,* 205 Mich 1; 171 NW 352 (1919), the Supreme Court found that the claimant had suffered the loss of his arm. The claimant's forearm had been crushed "at the junction of the upper and middle third", necessitating "amputation in the upper third". The Court's ruling was based on its application of the principle that words used in the act should be given their ordinary and accepted meaning.

The question of whether a claimant had suffered the loss of a foot or a leg was presented to the

Supreme Court in *Reno v Holmes, supra.* The Court held that the loss of a substantial portion of a leg constituted loss of the leg for purposes of the act.

In 1927, the Legislature amended the act to provide the following guidelines:

"An amputation between the elbow and wrist six or more inches below the elbow shall be considered a hand, above this point an arm;

\*   \*   \*

"An amputation between the knee and foot six or more inches below the knee shall be considered a foot, above this point a leg." 1927 PA 63, § 10.

The Supreme Court was asked to construe the latter portion of this amendment in *Clickner v Ingham County Road Comm,* 278 Mich 429; 270 NW 737 (1936). The claimant in *Clickner* suffered amputation of part of his leg and sought compensation benefits for loss of a leg rather than for loss of a foot. The Court found loss of a leg, holding that the relevant measurement was of the claimant's remaining leg bone, not including the flesh over the end of the bone. The Court did not specify which of the two leg bones—the tibia or the fibula —was to be measured.

The present guideline for distinguishing between leg and foot amputations was adopted in 1953, 1953 PA 198, § 10:

"An amputation between the knee and foot 7 or more inches below the tibial table (plateau) shall be considered a foot, above that point a leg." (Except for stylistic changes, the present version is the same as the 1953 amendment. See now MCL 418.361, subds [2][j] and [2][k]; MSA 17.237[361], subds [2][j] and [2][k].)

The provision concerning arm and hand amputations has not been similarly amended, its present form being virtually identical to the 1927 version. 1927 PA 63, § 10, *supra.*

The appeal board in this case effectively rewrote MCL 418.361, subds (2)(h) and (2)(i); MSA 17.237(361), subds (2)(h) and (2)(i), to provide that the amputation is to be measured not from "the elbow" but from the olecranon. (The olecranon is "the process of the ulna projecting behind the elbow joint". *Webster's Seventh New Collegiate Dictionary.*) While the appeal board's determination may have satisfied a statutorily required measurement of forearm length, it does not, in our judgment, satisfy the "below the elbow" requirement. Had the Legislature intended the olecranon as the reference point, it could have easily amended the provision, as it amended the leg/foot amputation provision. Absent such affirmative legislative action, we decline to ascribe such intent to the Legislature.

The elbow is commonly understood as the arm joint. There are actually three separate joints which comprise the elbow joint: the humeroulnar (the humerus is the bone of the upper arm), the humeroradial, and the proximal radioulnar. *Blakiston's New Gould Medical Dictionary* (2d ed, 1956), Tables of Joints and Ligaments, Elbow, p 1378; 3 Schmidt, Attorney's Dictionary of Medicine, Elbow Joint, p E-23. The common understanding of the word "below" as used in contexts similar to that of this statutory provision, is "from the lowest point of". To choose the olecranon as the reference point for the elbow is, in our judgment, arbitrary, and does not conform to the statutory requirement of measuring *"below* the elbow". The ulna, of which the olecranon is the uppermost part, extends above

the radius. To measure from the olecranon, therefore, is not to measure from the lowest point of the elbow.

In *Clickner v Ingham County Road Comm, supra,* the Supreme Court adopted the ordinary and commonly accepted meaning of the word "amputation"—the severing of a bone. Because there are two bones "below the elbow" and because the top of the radius is below the top of the ulna, we hold that the length of the radius is the measurement called for in MCL 418.361, subds (2)(h) and (2)(i); MSA 17.237(361), subds (2)(h) and (2)(i). This holding is, in our judgment, the only reasoned construction of the statutory language and comports most fully with the plain meaning of the statutory language. Based on the undisputed facts, therefore, plaintiff has suffered the loss of his arm.

The decision of the appeal board is reversed. Plaintiff is entitled to compensation at the rate of $112.67 per week for 269 weeks from May 5, 1978.